UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO S. PARDO, M.D.; RICARDO JOAQUIN; FRANCISCO PARDO; MARIA-AMELIA PARDO; and VICTOR PARDO,<br><br>Plaintiffs,<br><br>v.<br><br>THE COUNTY OF SAN DIEGO, et al.,<br><br>Defendants. | Case No.: 24-CV-1062 JLS (SBC)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>(ECF No. 22) |

Presently before the Court are Defendant County of San Diego's ("County") Motion to Dismiss Plaintiffs' Second Amended Complaint ("Mot.," ECF No. 22) and Memorandum of Points and Authorities in support thereof ("Mem.," ECF No. 22-1). Also before the Court are Plaintiffs Francisco S. Pardo, Ricardo Joaquin, Francisco Pardo, Maria-Amelia Pardo, and Victor Pardo's (collectively, "Plaintiffs") Opposition to the Motion ("Opp'n," ECF No. 23) and the County's Reply ("Reply," ECF No. 25). Having considered the Parties' arguments, Plaintiffs' Second Amended Complaint ("SAC," ECF No. 19), and the law, the Court **GRANTS** the County's Motion.

/ / /

/ / /

/ / /

# BACKGROUND

## I. Factual Background

Dr. Francisco S. Pardo is the biological father of triplets Francisco Pardo, Maria-Amelia Pardo, and Victor Pardo, all of whom were minors at the time of the events in question.[1] SAC ¶ 8. At that time, the Pardos all resided in the same home as Dr. Pardo's husband, Ricardo Joaquin. *See id.* ¶ 29. This case arises out of the County's attempted removal of the Pardo triplets from that home on May 12, 2022, a removal that Plaintiffs contend was animated by homophobic animus. *Id.* ¶ 27.

The events leading up to the attempted removal are unclear from the SAC, but it appears as though Child Welfare Services ("CWS"), an agent of the County, had undertaken prior investigations of the Pardo family resulting in allegations of emotional abuse. *Id.* ¶¶ 25–26. Plaintiffs allege that those investigations were driven by "bad faith" and "malicious persecutory intent" on the part of County officials who held anti-gay views. *Id.* ¶ 25.

One of those officials was Defendant Reina Lopez, a CWS social worker. *Id.* ¶¶ 10, 27. Plaintiffs allege that Lopez, along with a student of hers and four police officers, arrived at the Pardo home on May 12, 2022, attempting to remove the Pardo triplets. *Id.* ¶ 27. By Plaintiffs' account, the removal attempt was unsuccessful due to the lack of a signed warrant, though it prompted the County to schedule a detention hearing for the following Monday, May 16, 2022. *Id.* ¶ 28. Joining Lopez at the detention hearing was Defendant Tom Ruff, a supervisory CWS social worker. *Id.* ¶¶ 10, 28.

The detention hearing yielded mixed results. *Id.* ¶ 29. The Pardo triplets were allowed to remain at home with Dr. Pardo, but Joaquin, Dr. Pardo's husband, was ordered to keep his distance. *Id.* Respecting that order, Joaquin moved into a nearby hotel for

---

[1] The SAC only lists Maria-Amelia and Victor Pardo as the biological children of Francisco S. Pardo, though Plaintiffs clarify in their Opposition to the County's Motion to Dismiss that Francisco Pardo is also his biological child. *See* ECF No. 23 at 1. The Court construes the omission of Francisco Pardo from the SAC as an unintentional oversight.

about two months at his own expense. *Id.* Plaintiffs allege that Joaquin's departure from the home caused the Pardo family emotional harm, and they contend that the decisions made at the detention hearing were the result of "false allegations" made by social workers that were not disclosed prior to the hearing and were based on "personal animosity to gay couples." *Id.* ¶¶ 29, 32. As an apparent result of the detention hearing, the County reported both Dr. Pardo and his husband to the Child Abuse Central Index ("CACI"), an electronic database compiling "substantiated cases of physical abuse, sexual abuse, mental/emotional abuse, and/or severe neglect of a child."[2] *Id.* ¶ 36. Placement in CACI, per Plaintiffs, has caused Dr. Pardo and his husband humiliation and has harmed their career prospects. *Id.* ¶ 36.

The events following the detention hearing and CACI placement lack a clear timeline in the SAC, but Plaintiffs generally allege that, after the May 16, 2022 detention hearing, County officials continued to engage in a campaign to remove the Pardo triplets from their home until DCS eventually agreed to dismiss the case several months later. *Id.* ¶ 30. Plaintiffs allege that they "complained several times over the years of unjustified CPS involvement because of the gay animus," but they were unsuccessful in altering the outcome of the detention hearing or CACI placement. *Id.* ¶ 39. They also allege that the Pardo triplets, who have each suffered from mental health challenges dating back to March 2022, have seen their emotional condition deteriorate in the aftermath of the attempted removal. *Id.* ¶¶ 31–32. All three triplets, according to the SAC, have increased their use of controlled substances and experienced heightened anxiety and depression. *Id.* ¶ 31. As illustrative examples of the triplets' emotional state, one of the sons suffered his first episode of psychosis after the DCS investigation and the other son stopped attending counseling and school. *Id.* ¶ 37.

///

---

[2] *See Child Abuse Central Index*, State of Cal. Dep't of Just., https://oag.ca.gov/childabuse (last visited June 24, 2025).

## II. Procedural Background

Plaintiffs' efforts to litigate this case began in San Diego County Superior Court. There, on July 3, 2023, Plaintiffs filed suit against the County and the same County employees that are named as Defendants in this action. *See* ECF No. 22-2, Ex. B.[3] That case, like this one, asserted a host of violations of state law, including, *inter alia*, the Unruh Civil Rights Act, several provisions of the California Welfare and Institutions Code, and the California Government Code. *See id.* Nearly a year later, on June 21, 2024, Plaintiffs voluntarily dismissed the entire state court action without prejudice following a case management conference. *See* ECF No. 22-2, Ex. D.

The instant case began on June 20, 2024, the day before the state court case was voluntarily dismissed. *See* ECF No. 1. The County moved to dismiss that Complaint—which is, as far as the Court can tell, identical to the state court complaint—but Plaintiffs failed to oppose the County's Motion, so the Court granted the Motion under the factors set forth in *Ghazali v. Moran*, 46 F.3d 52 (9th Cir. 1995). *See* ECF No. 7. Plaintiffs were given fourteen days to file an amended complaint, which they did on September 3, 2024. ECF No. 8.

The second iteration followed a similar course when Plaintiffs, again, failed to oppose the County's Motion to Dismiss Plaintiffs' First Amended Complaint. *See generally* Docket. This time, however, Plaintiffs' counsel filed two documents on the opposition due date, styled "Opposition to Motion to Dismiss the First Amended Complaint for Damages" and "Supplemental Opposition to Motion to Dismiss the First Amended Complaint for Damages," respectively. *See* ECF Nos. 12, 13. In those two filings, Plaintiffs' counsel represented that he had never received notice of the Motion. *See* ECF Nos. 12, 13. In his view, this lack of notice was the result of a typographical error by the

---

[3] The Court may take judicial notice of "court filings and other matters of public record" where, as here, the documents "are readily verifiable." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741 746, n.6 (9th Cir. 2006). Thus, the County's Request for Judicial Notice (ECF No. 22-2) is **GRANTED**.

County, who he says entered the wrong email address on the proof of service submitted alongside the Motion. *See* ECF No. 13 at 2. Plaintiffs requested the Court reset the Motion to Dismiss on account of the mix-up, though nothing in their filings substantively engaged with the County's Motion. *See* ECF No. 12 at 2.

The next day, the County filed a Response to Plaintiffs' filings casting doubt on the lack of notice. *See* ECF No. 14. The County noted Civil Local Rule 5.4(c), which obviates any need to file a certificate of service with the Court when the opposing party is a filing user of the Court's electronic filing system. *Id.* at 2 (quoting S.D. Cal. CivLR 5.4(c)). For that reason alone, the County claimed that "any typographical error in Plaintiffs' Counsel's email address . . . was inconsequential as no such proof of service was actually required to be filed." *Id.* The County further questioned Plaintiffs' counsel's purported lack of notice on the ground that he had received notice of other updates from the Court's docket, so his failure to receive an update specific to the Motion was doubtful. *Id.*

The Court, like the County, found Plaintiffs' counsel's "excuse . . . less than convincing." ECF No. 15 at 2. On October 25, 2024, the Court stated as much in an Order Clarifying Plaintiffs' Filing Obligations. *Id.* After supplementing the County's Response with a few additional reasons as to why the typographical error was unlikely to be the cause of Plaintiffs' lack of notice of the Motion, the Court granted Plaintiffs the opportunity to cure their repeated failures to participate in the action by filing both an opposition to the County's Motion to Dismiss Plaintiffs' First Amended Complaint *as well as* "a more detailed explanation for [Plaintiffs'] failure to oppose the Motion." *Id.* In so doing, the Court warned Plaintiffs that their "fail[ure] to oppose the Motion or provide justification for their multiple filing failures" would result in dismissal of the case. *Id.* at 3–4.

Plaintiffs then filed an Opposition to the Motion to Dismiss but failed to file the explanation that was also ordered by the Court. ECF No. 16. The County submitted a Reply highlighting the failure, ECF No. 17, but again, the Court merely dismissed the First Amended Complaint without prejudice under the *Ghazali* factors, *see* ECF No. 18. The Court expressed its unmitigated displeasure with Plaintiffs' incessant failures to abide by

Court orders, but recognizing the strong public policy in favor of disposing of cases on the merits, the Court granted Plaintiffs one more opportunity. *Id.* at 7 (citing *Citizens Utils. Co. v. Am. Tel. & Tel. Co.*, 595 F.2d 1171, 1174 (9th Cir. 1979), *cert. denied*, 444 U.S. 931 (1979)). To that end, Plaintiffs were given fourteen days to file another amended complaint along with the previously ordered explanation that had not been filed. *Id.* at 8.

Plaintiffs timely filed the SAC, alongside a two-page declaration by Plaintiffs' counsel regarding his failure to file the prior oppositions. *See* ECF No. 19, 19-5. The factual allegations in the SAC continue to mirror those of the state court complaint and the prior Complaints filed in this action, but Plaintiffs now assert four claims under 42 U.S.C. § 1983 in addition to an assortment of state law claims. *See* SAC ¶¶ 43–71. And Plaintiffs' counsel appears to accept at least partial blame for the communication failures throughout this case that have significantly impaired the Court's ability to effectively manage its docket. The problem, he says, is that he had switched out the email address he used for work matters about ten years ago and did not realize that emails from the Court were being sent to a junk folder in his old account. ECF No. 19-5 ¶¶ 4–5. This issue has been fixed, according to counsel's declaration. *Id.* ¶ 4.

The County filed the instant Motion on January 17, 2025, seeking the full dismissal of this case. ECF No. 22. Beyond arguing that Plaintiffs' counsel's explanations concerning his repeated filing failures remain inadequate, the County argues that the newly pled Section 1983 claims are time-barred, thus eliminating any basis for this Court to exercise subject matter jurisdiction. *See id.* This time, Plaintiffs filed a timely Opposition, and the County filed a timely Reply, so the Motion is fully briefed. *See* ECF Nos. 23, 25.

## LEGAL STANDARD

Federal courts are courts of limited jurisdiction and thus have an obligation to dismiss claims for which they lack subject matter jurisdiction. *Demarest v. United States*, 718 F.2d 964, 965–66 (9th Cir. 1983). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). When a party files a 12(b)(1) motion, "there is a

presumption of a lack of jurisdiction until the plaintiff affirmatively proves otherwise." *Orient v. Linus Pauling Inst. of Sci. & Med.*, 936 F. Supp. 704, 706 (D. Ariz. 1996).

Under Federal Rule of Civil Procedure 12(b)(1), a party may raise by motion the defense that the complaint lacks subject matter jurisdiction via a facial or factual attack. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, such as the one here, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A court resolves a facial attack as it would a Rule 12(b)(6) motion: "Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient . . . to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

## ANALYSIS

### I. Failure to Comply with a Court Order

The first ground upon which the County seeks dismissal is one that the Parties should be intimately familiar with at this point: Plaintiffs' repeated failure to oppose the County's Motions to Dismiss and subsequent failure to comply with the Court's directive to explain the reasoning for said failure. To concisely summarize the procedural history of these filing deficiencies yet again, Plaintiffs failed to oppose both the County's first and second Motions to Dismiss due to counsel's purported lack of notice, which counsel says was due to a mistake regarding which of his email addresses was linked to the Court's electronic filing system. *See* ECF No. 19-5. This seeming mistake has resulted in what is now the third round of briefing concerning the adequacy of Plaintiff's pleading, each round of which closely resembles the others.

Twice before, the Court granted the County's Motions to Dismiss under the *Ghazali* factors for Plaintiffs' failure to oppose the Motions. *See* ECF Nos. 7, 18. For the benefit of completeness, the Court will again recite those *Ghazali* factors as follows: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its

docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases of [sic] their merits; and (5) the availability of less drastic sanctions." *Ghazali*, 46 F.3d at 53 (quoting *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986)). These same factors are implicated where, as here, the Court considers dismissing a case under Federal Rule of Civil Procedure 41(b) based on a plaintiff's failure to comply with a court order. *See Stone v. City of Tucson*, 249 F.R.D. 326, 327 (D. Ariz. 2008).

The County argues that this case should be dismissed with prejudice because of Plaintiffs' failure to comply with the Court's December 11, 2024 Order, in which Plaintiffs were ordered to provide justification for their repeated failures to oppose the County's Motions to Dismiss. ECF No. 18 at 8. Although Plaintiffs' counsel did attach a declaration to the SAC, filed on December 20, 204, the County contends that the declaration merely advanced the same unconvincing explanation that was provided upon the initial discovery of the missed oppositions and that counsel still has not provided a satisfactory explanation as to his failure to oppose the first Motion to Dismiss. Mem. at 14. Plaintiffs do not acknowledge this argument whatsoever in their Opposition. *See generally* Opp'n.

Troubled as the Court may be by Plaintiffs' continued refusal to meaningfully grapple with their mismanagement of this case, it will proceed to consider the merits of the County's Motion. The Court reaches this decision reluctantly, as Plaintiffs' litigation behavior thus far has thwarted the Court's ability "to control the pace of the docket" based on a purported mistake on the part of Plaintiffs' counsel that is wholly unacceptable. *See Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999). And Plaintiffs' failure to so much as mention the County's argument in their Opposition only bolsters the inescapable conclusion that Plaintiffs have next to no regard for the "the integrity of the district court." *See Henderson*, 779 F.2d at 1425. But the Court simultaneously appreciates the Ninth Circuit's admonition that "dismissal is a harsh penalty and, therefore, it should only be imposed in extreme circumstances." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992). And the fact that the County's Motion to Dismiss is now fully briefed presents a rare opportunity, as the Court can finally weigh in, for the first time in this case, on the

dispositive substantive issue of whether this case should even be heard in federal court in the first place. Thus, out of deference to the public "policy favoring disposition of cases on their merits," the Court declines to dismiss this case under Federal Rule of Civil Procedure 41(b). *See Citizens Utils. Co.*, 595 F.2d at 1174.

## II.   Merits of the County's Motion to Dismiss

Turning to the merits, the Court next addresses the County's argument that subject matter jurisdiction is lacking over this case. Although Plaintiffs now raise four claims in their SAC under 42 U.S.C. § 1983, the County contends that those claims are time-barred under the two-year statute of limitations, which the County believes started running on May 12, 2022. Mem. at 9. And if those claims are time-barred, then in the County's view, no subject matter jurisdiction exists over the remaining claims because those claims are all rooted in state law and the Court may not exercise supplemental jurisdiction without any claims falling within its original jurisdiction. *Id.* at 10 (citing *Scott v. Pasadena United Sch. Dist.*, 306 F.3d 646, 664 (9th Cir. 2002)).

Plaintiffs counter by invoking the twin doctrines of relation back and continuing violations. As to the relation back doctrine, Plaintiffs argue that the federal claims in the SAC "arise out of the same conduct and rest on the same set of facts" as the claims in the original Complaint, so those federal claims, filed on December 20, 2024, should relate back to the original Complaint, filed on June 20, 2024.[4] *See* Opp'n at 3–4. And as to the continuing violations doctrine, Plaintiffs argue that the attempted removal of the Pardo triplets on May 12, 2022, reflects just one of many incidents alleged in the SAC. *Id.* at 5. According to Plaintiffs, because "the violations are continuing," Plaintiffs should be

---

[4] The Court construes Plaintiffs' transcription of June 20, 2023 in their Opposition as a typographical error. *See* Opp'n at 3. It is possible, as the County suggests in its Reply, that Plaintiffs would like the SAC to relate back to the original complaint *filed in state court* on July 3, 2023. *See* Reply at 3–4. But the focus of Plaintiffs' relation-back argument is on the original Complaint *filed in this action*. *See* Opp'n at 3 (highlighting the original Complaint's citation to § 1983). And in any event, there is no question that "the 'relation back' reasoning does not apply with equal force to actions that are, in actuality, entirely new or separate proceedings." *Eng v. County of Los Angeles*, 737 F. Supp. 2d 1078, 1099 (C.D. Cal. 2010) (citing *O'Donnell v. Vencor Inc.*, 466 F.3d 1104, 1111 (9th Cir. 2006)).

permitted "to file claims for conduct that began outside the limitations period but continued into the limitations window." *Id.* The Court takes these two rebuttals in turn.

### A.   Relation Back

Federal Rule of Civil Procedure 15(c)(1)(B) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading." "Claims arise out of the same conduct, transaction, or occurrence if they 'share a common core of operative facts' such that the plaintiff will rely on the same evidence to prove each claim." *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008) (quoting *Martell v. Trilogy Ltd.*, 872 F.3d 322, 325–26 (9th Cir. 1989)).

Instead of challenging the factual overlap between Plaintiffs' original Complaint and the SAC, the County argues that the SAC is a "separate filing" rather than an amendment to the Complaint. Reply at 4 (citing *O'Donnell v. Vencor Inc.*, 466 F.3d 1104, 1111 (9th Cir. 2006)). For that reason, the County submits that the relation back doctrine is inapplicable because Rule 15 applies only to an "amendment" to a pleading, not a "separate filing." *Id.*

The County's argument rests on a misreading of *O'Donnell*. There, the court declined to apply the relation back doctrine to a scenario involving two separate actions, the first of which reached a final judgment. *See Wang v. Am. Sai Green Corp.*, No. 1:13-cv-00026, 2014 WL 1365740, at *4 (D. N. Mar. I. Apr. 4, 2014) (explaining that, in *O'Donnell*, the "first dismissal order reached a final judgment, thus allowing an appeal"). Here, unlike the plaintiff in *O'Donnell*, Plaintiffs filed a first and then second amendment to the Complaint pursuant to express permission as granted by the Court. *See* ECF Nos. 7, 18. Thus, the SAC is an "amendment to a pleading" as is required by the relation back doctrine under Rule 15.[5] *See Santana v. Holiday Inns, Inc.*, 686 F.2d 736,

---

[5] The County also contends that the Court should not apply the doctrine of equitable tolling to this suit, Reply at 5 n.5, but the Court does not interpret Plaintiffs' Opposition to advance such an argument. Distinct from the relation back doctrine, which is based on the Federal Rules of Civil Procedure, equitable

738–39 (9th Cir. 1982) (applying the relation back doctrine to revive a case that had ended in summary judgment at the trial court).  Accordingly, for purposes of assessing whether Plaintiffs can overcome the statute of limitations with respect to their § 1983 claims, the Court proceeds with the understanding that Plaintiffs' SAC relates back to the date of their original Complaint, June 20, 2024.

### B. *Continuing Violation Doctrine*

That Plaintiffs' SAC relates back to June 20, 2024, does not end the analysis, as the County argues that the § 1983 claims are time-barred even if the June 2024 date is operative.  *See* Reply at 5.  The County premises that argument on the existence of a two-year statute of limitations, which it says federal courts borrow in civil rights actions from the forum state's limitations period applicable to personal injury claims.  *See* Mem. at 9.  Here, the Court accepts the County's premise because California has imposed a two-year statute of limitations for personal injury torts.  *See Kemp v. Regents of Univ. of Cal.*, No. C-09-4687 PJH, 2010 WL 2889224, at *3 (N.D. Cal. July 22, 2010) (citing Cal. Civ. Proc. Code § 335.1).  Plaintiffs do not challenge this premise.

What Plaintiffs do challenge, however, is the availability of the continuing violation doctrine.  In Plaintiffs' view, under that doctrine, they may assert "claims for conduct that began outside the limitations period but continued into the limitations window" so long as the "acts were parts of a continuing violation amounting to a single wrong occurring within the limitations period."  Opp'n at 5.  In their Opposition, Plaintiffs highlight certain factual allegations in the SAC that they believe support their view that the doctrine is applicable in this case.  The County, in response, argues that none of the acts Plaintiffs rely on can save the § 1983 claims under controlling law.

---

tolling "is a judge-made doctrine 'which operates independently of the literal wording of the Code of Civil Procedure' to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness." *Lantzy v. Centex Homes*, 73 P.3d 363, 370 (Cal. 2003) (quoting *Addison v. California*, 578 P.2d 941 (1978)); *see also Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004) (applying California state law on equitable tolling to a federal claim under 42 U.S.C. § 1983).  Plaintiffs do not invoke this latter equitable doctrine in their Opposition.

The Court agrees with the County that Plaintiffs' position is mistaken. Though the continuing violation doctrine has historically encompassed a broader scope, more recent case law has abrogated the doctrine beyond just a few recognized exceptions. In general, the continuing violation doctrine, which extends to § 1983 claims, "allow[s] a plaintiff to seek relief for events outside of the limitations period." *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) (first citing *Gutowsky v. County of Placer*, 108 F.3d 256, 259 (9th Cir. 1997); and then citing *Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 924 (9th Cir. 1982)). But to qualify under the doctrine, a discrete discriminatory act must itself be actionable; it is not enough for the act to be "related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

On the ground, this means that a "discriminatory practice, though it may extend over time and involve a series of related acts, remains divisible into a set of discrete acts, legal action on the basis of each of which must be brought within the statutory limitations period." *Lyons v. England*, 307 F.3d 1092, 1108 (9th Cir. 2002). The only recognized exceptions to this rule, as recognized by the Ninth Circuit, are hostile work environment claims and class-wide pattern-or-practice claims. *See Bird v. Dep't of Human Servs.*, 935 F.3d 738, 748 (9th Cir. 2019) (citing *Lyons*, 307 F.3d at 1107 n.8). For other claims of discrete discriminatory acts, the Ninth Circuit has "consistently refused to apply the [doctrine] to rescue individualized claims that are otherwise time-barred." *Id.*

Plaintiffs' § 1983 claims in this case do not warrant application of the continuing violation doctrine. By the clear terms of the SAC, Plaintiffs are not asserting hostile work environment claims nor are they asserting class-wide pattern-or-practice claims.[6] Instead,

---

[6] Although Plaintiffs assert a policy-and-practice of discrimination claim as their third cause of action, *see* SAC ¶¶ 53–62, the SAC lacks any factual allegations to support such a theory. As the Ninth Circuit has explained, class-wide pattern-or-practice claims generally involve identifying a protected class and looking at evidence of past treatment of the protected group to establish a pattern or practice of intentional discrimination. *Lyons*, 307 F.3d at 1107 n.8 (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 337–38 (1977)). Plaintiffs do indeed allege discriminatory intent on the part of the County, but all of the allegations in the SAC are particularized to the County's treatment of the individual Plaintiffs rather than

Plaintiffs are asserting archetypal individualized claims of discrete discriminatory acts. As the *Bird* court proclaimed, following the Supreme Court's 2002 decision in *Morgan*, "little remains of the continuing violations doctrine" other than the two exceptions recognized above. 935 F.3d at 748. Thus, Plaintiffs' claims are only actionable if they present discrete, discriminatory acts that, on their own, fall within the limitations period.

The federal claims here do not meet the mark. Because Plaintiffs filed their Complaint on June 20, 2024, they must seek relief on the basis of a discrete, discriminatory act that occurred on or after June 20, 2022. Yet they allege only discrete discriminatory acts that took place before that date. Plaintiffs do not specify in the SAC what discriminatory acts are tied to each cause of action, merely asserting that the "foregoing actions of Defendants" deprived them of their constitutional rights. *See, e.g.*, SAC ¶ 50. A close parsing of the SAC, however, reveals only two acts with associated dates that could potentially serve as the basis of the claims: the attempted removal of the Pardo triplets on May 12, 2022, and the placement of the Pardo parents on the CACI on May 17, 2022. *See* SAC ¶ 27. That attempted removal took place outside the limitations period, and as the Court concluded above, the continuing violation doctrine cannot be wielded to save a claim based on that event even if related events took place within the limitations period. *See Lyons*, 307 F.3d at 1107 (concluding that a plaintiff cannot save a claim based on a discriminatory act by alleging that the act "flows from a company-wide, or systematic, discriminatory practice"). Accordingly, Plaintiffs' § 1983 claims are time-barred and cannot be resuscitated by the continuing violation doctrine.

Resisting this conclusion, Plaintiffs attempt to use their Opposition to fill in some of the gaps from the SAC, but that attempt fails for at least two reasons. First and foremost, in reviewing the County's Motion to Dismiss, "the court's review is limited to the contents of the complaint." *Chrisman v. Smith*, No. 08CV975-IEG-LSP, 2008 WL 4891235, at *3

---

a general class of homosexual persons. *See Bird*, 935 F.3d at 748 n.8 (finding a claim individualized where the plaintiff did not seek class certification or identify potential class member plaintiffs).

(S.D. Cal. Nov. 12, 2008) (citing *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996)). Plaintiffs supplement the factual allegations in the SAC with new factual allegations in their Opposition, but courts generally "may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). Thus, any new allegations in the Opposition not sourced from the SAC are beyond the scope of the Court's review.

Nevertheless, even if the Court were to accept these new factual allegations, they still would not support Plaintiffs' invocation of the continuing violation doctrine. As already discussed, the continuing violation doctrine as currently understood arises in only two scenarios: hostile work environment claims and class-wide pattern-or-practice claims. *See Bird*, 935 F.3d at 748 (citing *Lyons*, 307 F.3d at 1107 n.8). Neither of those scenarios are alleged here, so the doctrine has no work to do.

Further damaging to Plaintiffs' argument is the reality that the conduct occurring after June 2022 identified by Plaintiffs in their Opposition "is best understood as the continuing impact from a past violation." *Id.* (citation modified) (citing *Williams*, 665 F.2d at 924). Among other events, Plaintiffs identify the following in their Opposition: a subsequent June 29, 2022 hearing that was held as a follow-up to the May 16, 2022 detention hearing; the August 2022 filing of a claim challenging the CACI placement, which Plaintiffs contend occurred on May 17, 2022; and follow-on court dates through the end of 2022 adjudicating the Pardo parents' fitness to retain custody. Opp'n at 5–6. Plaintiffs also cite the ongoing emotional trauma being experienced by the Pardo triplets and the ongoing reputational harms being suffered by the Pardo parents. Opp'n at 8. At bottom, these events, newly presented in the Opposition, simply demonstrate "injuries resulting from the [May 2022] act[s] of" attempting to remove the Pardo triplets and placing the Pardo parents on the CACI. *See Bird*, 935 F.3d at 748. As the case law makes clear, "continuing impact from past violations is not actionable." *Williams*, 665 F.2d at 924

(quoting *Reed v. Lockheed Aircraft Corp.*, 613 F.2d 757, 760 (9th Cir. 1980)); *see also Del. State Coll. v. Ricks*, 449 U.S. 250, 252–54 (1980) (recognizing that "[t]he proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful" (emphasis in original) (quoting *Abramson v. Univ. of Haw.*, 594 F.2d 202, 209 (9th Cir. 1979))).  Plaintiffs do not argue that any of these more recent events are individually actionable, and indeed, their reliance on the continuing violation doctrine is an implicit concession that they seek relief based on the May 12, 2022 attempted removal and May 17, 2022 CACI placement.

Thus, the continuing violation doctrine does not apply, and Plaintiffs are barred from seeking relief from the conduct alleged here that took place outside the limitations period, which began on June 20, 2024.  Because they seek relief only from events that occurred in May 2024, Plaintiffs' § 1983 claims are barred by the statute of limitations.  Accordingly, the Court **GRANTS** the County's Motion to Dismiss as to Claims I–IV.

### III. Remaining State Law Claims

Having successfully achieved dismissal of Plaintiffs' federal claims, the County urges that the state law claims must also be dismissed because the Court may not exercise supplemental jurisdiction under 28 U.S.C. § 1367 where it has no subject matter jurisdiction over the federal claims. Mem. at 10 (citing *Scott*, 306 F.3d at 664).  Plaintiffs' only response is that the federal claims should survive dismissal, and as a result, supplemental jurisdiction is proper. *See* Opp'n at 8.  Though the County's argument is built upon the faulty premise that the § 1983 statute of limitations rule is jurisdictional, the Court agrees with the County's bottom-line conclusion.

In 28 U.S.C. § 1367(a), Congress granted district courts "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."  But when the claims falling within a district court's original jurisdiction are dismissed, the district court's supplemental jurisdiction over the other state law claims is jeopardized.  As it turns out, whether the district court has discretion to dismiss the state law claims or whether the

district court must, in a mandatory sense, dismiss the state law claims turns on the basis upon which the federal claims were dismissed.

Where, on the one hand, a "court dismisses [all federal claims] for lack of subject matter jurisdiction, it has no discretion and must dismiss all claims" remaining in the case. *Herman Family Revocable Tr. v. Teddy Bear*, 254 F.3d 802, 806 (9th Cir. 2001). Conversely, where a "court dismisses on the merits a federal claim over which it had original jurisdiction, it may then decline to exercise supplemental jurisdiction over the remaining state claims, subject to the factors set forth in § 1367(c)(1)–(4)." *Id.* (citing *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997)). Those § 1367(c) factors include whether: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

The County posits that, because Plaintiffs' § 1983 claims are barred by the statute of limitations, the Court lacks jurisdiction over those claims. That assertion is incorrect. The Ninth Circuit has "explained that the [§ 1983] statute of limitations [is] not jurisdictional, but rather an affirmative defense." *Krug v. Imbordino*, 896 F.2d 395, 396 (9th Cir. 1990); *see also Eyring v. Fondaco*, 667 F. App'x 983, 984 (10th Cir. 2016) (reasoning that the statute of limitations for § 1983 claims is not jurisdictional). Thus, the Court's conclusion above that Plaintiffs' § 1983 claims must be dismissed as time-barred is more akin to a decision on the merits than a jurisdictional holding. Consequently, the Court's authority to decline supplemental jurisdiction over Plaintiffs' state law claims is discretionary, not mandatory. *See Herman Family Revocable Tr.*, 254 F.3d at 806.

Despite this nuanced correction to the County's argument, the Court concurs that Plaintiffs' state law claims should be dismissed. The ordinary rule favors dismissal of state law claims when the federal claims are dismissed before trial. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed

before trial, . . . the state claims should be dismissed as well."). And this case, which is still at the pleading stage, presents a straightforward instance of judicial economy and comity principles weighing in favor of dismissal. *See Acri*, 114 F.3d at 1001 (identifying "economy, convenience, fairness, and comity" as essential factors to consider). As courts have long recognized, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Accordingly, the Court **GRANTS** the County's Motion to Dismiss as to Claims V–X. *See Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001).

## IV. Leave to Amend

The final question becomes whether the Court should grant Plaintiffs leave to file a third amended complaint. Leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). But while the rule should be interpreted liberally, leave should not be granted automatically. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990). In determining whether to grant leave to amend, trial courts should consider various factors, including bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the party has previously amended. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Applying the *Foman* factors here, the Court reluctantly exercises its discretion to grant Plaintiffs leave to amend. The Ninth Circuit has a "longstanding rule that leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (citation modified) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988)). The Court has its doubts that Plaintiffs will be able to overcome the statute of limitations bar to their federal claims, but as noted above, this is the first chance the Court has had to weigh in on the merits of the § 1983 claims and Plaintiffs have not raised all possible objections, like equitable tolling, to the two-year limitations period. Thus, it is not "clear that granting leave to amend would [be] futile." *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*,

368 F.3d 1053, 1061 (9th Cir. 2004).  And though the County points to indicators of the possibility of bad faith or dilatory motive on Plaintiffs' part, declining leave to amend on that basis should be done only on the basis of "strong evidence," which the Court declines to find here.  *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013).  There is also no sign of prejudice to the County by the prospect of having to continue defending against claims based upon a set of operative facts that remain little changed from the outset of this case.  *Id.* at 1118 (citing *Hurn v. Ret. Fund Tr. of Plumbing, Heating & Piping Indus. of S. Cal.*, 648 F.2d 1252, 1254 (9th Cir. 1981)).

Now that Plaintiffs have ostensibly cured their notification difficulties with the Court's electronic filing system, it appears as though this case is ripe to be fully resolved on the merits.  In the event that Plaintiffs' past pattern of negligent behavior re-emerges, however, the Court will not be shy to put an end to this case.  Indeed, the Court "need not extend to Plaintiff[s] unlimited opportunities to amend [their] complaint to state a claim," particularly when they have repeatedly failed to comply with the Local Rules and Court Orders.  *See Khouanmany v. Penzone*, No. CV 19-02983-PHX-SRB (JZB), 2020 WL 4877587, at *3 (D. Ariz. Aug. 3, 2020) (citing *Thompson v. Hous. Auth. of City of L.A.*, 782 F.2d 829, 931 (9th Cir. 1986)).

## CONCLUSION

In light of the foregoing, the Court **GRANTS** the County's Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 22) and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' Second Amended Complaint.  Plaintiffs **MAY FILE** an amended complaint curing the deficiencies identified in Defendant's Motion <u>within fourteen (14) days</u> of the date on which this Order is electronically docketed.  Should Plaintiffs fail to file an amended pleading in accordance with this Order, the Court will enter a final order dismissing this civil action based on Plaintiffs' failure to prosecute in compliance with a court order requiring amendment.  *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005)

/ / /

/ / /

("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated: July 10, 2025

Hon. Janis L. Sammartino
United States District Judge