

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO S. PARDO, M.D.; RICARDO JOAQUIN; FRANCISCO PARDO; MARIA-AMELIA PARDO; and VICTOR PARDO, <br><br> Plaintiffs, <br><br> v. <br><br> THE COUNTY OF SAN DIEGO, et al., <br><br> Defendants. | Case No.:  24-CV-1062 JLS (SBC) <br><br> **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT** <br><br> (ECF No. 28) |

Presently before the Court are Defendant County of San Diego's ("County") Motion to Dismiss Plaintiffs' Third Amended Complaint ("Mot.," ECF No. 28). Also before the Court are Plaintiffs Francisco S. Pardo's, Ricardo Joaquin's, Francisco Pardo's, Maria-Amelia Pardo's, and Victor Pardo's (collectively, "Plaintiffs") Opposition to the Motion ("Opp'n," ECF No. 29) and the County's Reply ("Reply," ECF No. 30). Having considered the Parties' arguments, Plaintiffs' Third Amended Complaint ("TAC," ECF No. 27), and the law, the Court **GRANTS** the County's Motion.

/ / /

/ / /

/ / /

/ / /

# BACKGROUND

## I.    Factual Background

Dr. Francisco S. Pardo is the biological father of triplets Francisco Pardo, Maria-Amelia Pardo, and Victor Pardo, all of whom were minors at the time of the events in question. TAC ¶¶ 4–6. At that time, the Pardos all resided in the same home as Dr. Pardo's husband, Ricardo Joaquin. *See id.* ¶ 19. This case arises out of the County's attempted removal of the Pardo triplets from that home on May 12, 2022, a removal that Plaintiffs contend was animated by homophobic animus. *Id.* ¶ 34.

Before the County's involvement with the family, the triplets, "who suffer from psychological conditions and drug use," were "being treated by licensed psychiatrists, psychologists, attending counseling, and were enrolled in behavioral and rehabilitation programs." *Id.* ¶ 21. Francisco Pardo and Ricardo Joaquin (the "Parents") "routinely met with the triplets' treating physicians, counselors, school officials, and other outside assistance." *Id.* ¶ 22. The Parents had a "disagreement" with the then-treating psychiatrist "about the adequacy of care one of the triplets was receiving" and the "County-contracted psychiatrist's office" contacted the County of San Diego Department of Health and Human Services ("DHHS") who assigned a Child Welfare Services ("CWS") to investigate potential abuse or neglect. *Id.* ¶ 24.

One of those assigned was Defendant Reina Lopez, a CWS social worker. *Id.* ¶ 25. Plaintiffs allege that Lopez was responsible for "unsubstantiated accusations of emotional abuse being committed by the parents" "born out of Lopez's animus towards same sex parents, and her belief that children should be raised by heterosexual parents." *Id.* ¶ 26. Plaintiffs allege a laundry list of discriminatory actions committed by Lopez through her investigation, including attempting to "elicit false information from the then-minor children by twisting their words and manipulating their recollections to substantiate grounds of abuse," repeatedly contacting the triplets despite their refusal to speak with her, and failing to consider the triplets' underlying psychological disorders and psychosis. *Id.* ¶¶ 27–31.

Plaintiffs allege that Lopez, along with a student of hers, and four police officers, arrived at the Pardo home on May 12, 2022, attempting to remove the Pardo triplets.  *Id.* ¶ 34.  By Plaintiffs' account, the removal attempt was unsuccessful due to the lack of a signed warrant, though it prompted the County to schedule a detention hearing for the following Monday, May 16, 2022.  *Id.* ¶¶ 39–41.  In preparation for this hearing, the Parents requested access to their CWS file but allege that Defendants failed to produce the necessary documents.  *Id.* ¶ 40.  At this hearing, "the court determined that it was in the best interest of the children to remain in the family home."[1]  *Id.* ¶ 41.  The Parents allegedly again requested a copy of their CWS file, but the Defendants only provided the Child Family Teen ("CFT") report created by Defendant Lonnie Lou, Lopez's supervisor.  *Id.* ¶ 42.  This CFT report "contained derogatory comments regarding their sexuality."  *Id.* The County reported both Dr. Pardo and his husband to the Child Abuse Central Index ("CACI"), an electronic database compiling "substantiated cases of physical abuse, sexual abuse, mental/emotional abuse, and/or severe neglect of a child."[2]  *Id.* ¶ 48.  The Parents were "denied their requests for a grievance hearing" and "denied access to documents related to the CACI reporting."  *Id.*

On June 17, 2022, Defendants Lou and Ruff "scheduled a CFT meeting" to "discuss the allegations against the parents."  *Id.* ¶ 43.  The County facilitator responsible for the meeting allegedly did not appear, and the meeting was never rescheduled as promised.  *Id.*  The Parents made "multiple follow-up requests" for the CWS file including through two attorneys representing the Parents.  *Id.*  In July or August of 2022, the Parents were informed by counsel in a related juvenile detention hearing that the planned hearings "were being impeded from proceeding in a timely fashion because County Counsel was 'paranoid' (or words to that effect) and would not produce discovery . . . because of

---

[1] The Court notes that some factual allegations differ between the TAC and the Second Amended Complaint ("SAC," ECF No. 19).  Specifically, that Joaquin, Dr. Pardo's husband, was ordered at this hearing to keep his distance from the home and resided at a nearby hotel for about two months. SAC ¶ 29.
[2] *See Child Abuse Central Index*, State of Cal. Dep't of Just., https://oag.ca.gov/childabuse (last visited January 6, 2026).

litigation, or anticipated litigation." *Id.* ¶ 45.

The County continued to investigate the allegations of abuse by conversing with neighbors and school counselors—including discussion of the alleged emotional abuse and alleged discussion that children should be in the custody of their mother, that men lack maternal instincts and are inherently abusive, and that the children are at risk if raised by same-sex fathers. *Id.* ¶¶ 50–51. Placement in CACI and these discussions with community members, per Plaintiffs, has caused Dr. Pardo and his husband humiliation and has harmed their career prospects. *Id.* ¶¶ 51–53.

They also allege that the Pardo triplets, who have each suffered from mental health challenges dating back to March 2022, have seen their emotional condition deteriorate in the aftermath of the attempted removal. *Id.* ¶¶ 53–55. All three triplets, according to the TAC, have increased their use of controlled substances and experienced heightened anxiety and depression. *Id.* As illustrative examples of the triplets' emotional state, one of the sons suffered his first episode of psychosis after the CWS investigation and the other son stopped attending counseling and school. *Id.* ¶ 54.

Plaintiffs allege that throughout this investigation and afterwards they "individually and by and through their legal representatives made numerous requests for a complete copy of their CWS file, but to no avail"—concluding that the Defendants acted in bad faith. *Id.* ¶ 56. On June 1, 2023, Plaintiffs "urgently drove to the CWS records administrative offices to obtain a copy of the CWS records needed to file a lawsuit before the statute of limitations expired." *Id.* ¶ 57. These records were never received. *Id.* Further, Plaintiffs allege that they "made multiple requests and visited the County offices to obtain a copy of the CACI report to defend against the abuse allegations." *Id.* ¶ 58. Plaintiffs conclude that the Defendants' failure to respond or act on these requests for information is in bad faith and retaliatory, causing them extreme emotional distress and impacting their professional licenses, ability to obtain insurance and make a living, and reputation. *Id.* ¶ 61.

## II. Procedural Background

Plaintiffs' efforts to litigate this case began in San Diego County Superior Court.

There, on July 3, 2023, Plaintiffs filed suit against the County and the same County employees that are named as Defendants in this action. *See* ECF No. 22-2, Ex. B.[3]  That case asserted a host of violations of state law, including, *inter alia*, the Unruh Civil Rights Act, several provisions of the California Welfare and Institutions Code, and the California Government Code. *See id.*  Nearly a year later, on June 21, 2024, Plaintiffs voluntarily dismissed the entire state court action without prejudice following a case management conference. *See* ECF No. 22-2, Ex. D.

The instant case began on June 20, 2024, the day before the state court case was voluntarily dismissed. *See* ECF No. 1.  The County moved to dismiss that Complaint—which is, as far as the Court can tell, identical to the state court complaint—but Plaintiffs failed to oppose the County's Motion, so the Court granted the Motion under the factors set forth in *Ghazali v. Moran*, 46 F.3d 52 (9th Cir. 1995). *See* ECF No. 7.  Plaintiffs were given fourteen days to file an amended complaint, which they did on September 3, 2024. ECF No. 8.

The second iteration followed a similar course when Plaintiffs, again, failed to oppose the County's Motion to Dismiss Plaintiffs' First Amended Complaint. *See generally* Docket.  Plaintiffs' counsel represented that he had never received notice of the Motion—blaming the County for making a typographical error. *See* ECF Nos. 12, 13.  The Court, like the County, found Plaintiffs' counsel's "excuse . . . less than convincing." ECF No. 15 at 2.  After discussing why the typographical error was unlikely to be the cause of Plaintiffs' lack of notice of the Motion, the Court granted Plaintiffs the opportunity to cure their repeated failures to participate in the action by filing both an opposition to the County's Motion to Dismiss Plaintiffs' First Amended Complaint *as well as* "a more detailed explanation for [Plaintiffs'] failure to oppose the Motion." *Id.*  In so doing, the Court warned Plaintiffs that their "fail[ure] to oppose the Motion or provide justification

---

[3] The Court took judicial notice of the state court filing in its previous Order. *See* ECF No. 26 at 4 n.1.

for their multiple filing failures" would result in dismissal of the case. *Id.* at 3–4.

Plaintiffs then filed an Opposition to the Motion to Dismiss but failed to file the explanation that was also ordered by the Court. *See* ECF No. 16. The County submitted a Reply highlighting the failure, *see* ECF No. 17, but again, the Court merely dismissed the First Amended Complaint without prejudice under the *Ghazali* factors, *see* ECF No. 18. The Court expressed its unmitigated displeasure with Plaintiffs' incessant failures to abide by Court orders, but recognizing the strong public policy in favor of disposing of cases on the merits, the Court granted Plaintiffs one more opportunity. *Id.* at 7 (citing *Citizens Utils. Co. v. Am. Tel. & Tel. Co.*, 595 F.2d 1171, 1174 (9th Cir. 1979), *cert. denied*, 444 U.S. 931 (1979)). To that end, Plaintiffs were given fourteen days to file another amended complaint along with the previously ordered explanation that had not been filed. *Id.* at 8.

Plaintiffs timely filed a Second Amended Complaint ("SAC," ECF No. 19), alongside a two-page declaration by Plaintiffs' counsel regarding his failure to file the prior oppositions (ECF No. 19-5). The factual allegations in the SAC continued to mirror those of the state court complaint and the prior Complaints filed in this action, but Plaintiffs added four claims under 42 U.S.C. § 1983 in addition to an assortment of state law claims. *See* SAC ¶¶ 43–71. The County filed a Motion to Dismiss the SAC (ECF No. 22) arguing that Plaintiffs' counsel's explanations concerning his repeated filing failures remain inadequate and that the newly pled Section 1983 claims are time-barred. Plaintiffs filed a timely Opposition, and the County filed a timely Reply. *See* ECF Nos. 23, 25.

On July 10, 2025, the Court granted the County's Motion to Dismiss the SAC ("Order," ECF No. 26) allowing Plaintiffs leave to amend. The Court declined to dismiss the case under Federal Rule of Civil Procedure 41(b) based on Plaintiffs' "continued refusal to meaningfully grapple with their mismanagement of this case" "out of deference to the public policy favoring disposition of cases on their merits." Order at 8–9 (quoting *Citizens Utils. Co.*, 595 F.2d at 1174). In considering the statute of limitations argument, the Court found that Plaintiffs' SAC related back to the filing date of their original federal Complaint, June 20, 2024. *Id.* at 11. The Court, addressing the County's argument that the § 1983

claims were time barred even if the June 2024 date was operative, concluded that the continuing violation doctrine was inapplicable because Plaintiffs were not asserting hostile work environment claims or class-wide pattern-or-practice claims. *Id.* at 12. The Court found that "[b]ecause Plaintiffs filed their Complaint on June 20, 2024, they must seek relief on the basis of a discrete, discriminatory act that occurred on or after June 20, 2022." *Id.* at 13. In the SAC, the only acts that could potentially serve as the basis of the claims were the "attempted removal of the Pardo triplets on May 12, 2022, and the placement of the Pardo parents on the CACI on May 17, 2022." *Id.* (citing SAC ¶ 27). These two acts took place outside the limitations period and were found to be time barred. *Id.*

Plaintiffs attempted to supplement the factual allegations in the SAC with new allegations in their Opposition. *Id.* at 14. The Court found—even if it accepted the new allegations—that they still would not support invocation of the continuing violation doctrine, and that the conduct occurring after June 2022 identified by Plaintiffs in their Opposition was "best understood as the continuing impact from a past violation," thus making those additional facts inactionable. *Id.* (quoting *Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 924 (9th Cir. 1982)). The Court concluded that Plaintiffs reliance on the continuing violation doctrine was "an implicit concession that they seek relief based on the May 12, 2022 attempted removal and May 17, 2022 CACI placement"—which the Court found to be time-barred. *Id.* at 15. The Court declined to exercise supplemental jurisdiction over the remaining state law claims and thus dismissed the entire action. *Id.* at 16–17. The Court "reluctantly" granted Plaintiffs leave to amend, expressing "doubts that Plaintiffs [would] be able to overcome the statute of limitations bar to their federal claims." *Id.* at 17. The Court noted, however, that Plaintiffs had not raised "all possible objections, like equitable tolling, to the two-year limitations period." *Id.*

On July 24, 2025, Plaintiffs filed the TAC alleging thirteen causes of action, many of which slightly differ from the SAC. *Cf.* ECF Nos. 27, 19. Under 42 U.S.C. § 1983, Plaintiffs now allege violation of the Equal Protection Clause, Substantive Due Process, Procedural Due Process, and Retaliation in violation of the First Amendment. *See* TAC.

On August 7, 2025, the County filed the present Motion to Dismiss Plaintiffs' Third Amended Complaint arguing that Plaintiffs' § 1983 causes of action are time-barred and that Plaintiffs failed to satisfy the equitable tolling doctrine. Mot. at 11–13. The County further argues that the Court should decline to exercise supplemental jurisdiction over the remaining state law claims. *Id.* at 14.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted." To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557).

Though this plausibility standard "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). In other words, a complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557). Put differently, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Review under Rule 12(b)(6) requires a context-specific analysis involving the Court's "judicial experience and common sense." *Iqbal*, 556 U.S. at 679. In performing that analysis, "a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Wi-LAN Inc. v. LG Elecs., Inc.*, 382 F. Supp. 3d 1012, 1020 (S.D. Cal. 2019). "[W]here the well-pleaded facts do not

permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (second alternation in original).  If a complaint does not survive Rule 12(b)(6), a court grants leave to amend unless it determines that no modified contention "consistent with the challenged pleading could . . . possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

## ANALYSIS

### I.    Statute of Limitations

The Court first addresses the County's argument that the five 42 U.S.C. § 1983 causes of action asserted against the County for alleged sexual orientation discrimination, violations of procedural and substantive due process under the Fourteenth Amendment, and retaliation in violation of the First Amendment are barred by the applicable two-year statute of limitations.  Mot. at 11–12.

In the Court's Order dismissing the SAC, the Court concluded that the SAC is an "amendment to a pleading" as required by the relation back doctrine under Federal Rule of Civil Procedure 15, and, therefore, Plaintiffs' SAC related back to the date of filing of the original Complaint in federal court, June 20, 2024.  Order at 11.  Likewise, here, the Court finds that the TAC is an "amendment to a pleading," and, for purposes of assessing whether Plaintiffs can overcome the statute of limitations, the TAC relates back to the date of their original Complaint, June 20, 2024.

Also in the Court's Order, the Court concluded that California's two-year statute of limitations for personal injury torts applies to the causes of action in this case.  Order at 11 (citing *Kemp v. Regents of Univ. of Cal.*, No. C-09-4687 PJH, 2010 WL 2889224, at *3 (N.D. Cal. July 22, 2010)).  "For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law." *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004) (citations omitted); *see also Elliot v. City of Union City*, 25 F.3d 800, 802 (9th Cir. 1994).

"The statute of limitations for personal injury actions under California law is two years." *Jones v. Cnty. of San Diego*, No. 20CV1989-GPC(DEB), 2021 WL 4460788, at *3 (S.D. Cal. Sept. 21, 2021) (first citing Cal. Code. Civ. P. § 335.1; then citing *Blanas*, 393 F.3d at 927). Therefore, the Court—and both Parties—agree that California's two-year statute of limitations and equitable tolling principles apply to this action.[4]   *See* Mot. at 12. This means that the cause of action must have accrued two-years before the June 20, 2024, date of filing of the original Complaint—June 20, 2022. Federal law determines when a cause of action accrues for a § 1983 claim. *Belanus v. Clark*, 796 F.3d 1021, 1025 (9th Cir. 2015) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). A cause of action accrues when "the plaintiff knows or has reason to know of the injury which is the basis of the action." *Maldonado v. Harris*, 370 F.3d 945, 955 (9th Cir. 2004) (quoting *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001)).

Here, the events underlying the causes of action center on the May 12, 2022, attempted removal of the Pardo triplets and the May 17, 2022, placement of the Parents on the CACI.[5]   *See* SAC ¶¶ 34, 48. These two events took place before the June 20, 2022, cut-off for the statute of limitations and are thus time-barred—subject to an equitable tolling analysis.

/ / /

/ / /

---

[4] Plaintiffs do not contest that the two-year statute of limitations is applicable. *See generally* Opp'n.

[5] The only mention of the date of the CACI placement is found in Plaintiffs' Opposition to the County's Motion to Dismiss Plaintiffs' Second Amended Complaint. *See* ECF No. 23 at 5 ("On May 17, 2022, Defendants reported the Parents to the Child Abuse Central Index (CACI) without notice and an opportunity for a hearing in violation of their due process rights."). Thus, the Court relied on the May 17, 2022, date in its previous Order. *See* Order at 13–15. The only discussion of dates surrounding the Parents' CACI placement in the TAC is that the Parents were denied requests for a grievance hearing and access to documents related to the CACI reporting in "July and August of 2022." TAC ¶ 48. For the sake of consistency, the Court will assume the May 17, 2022, date is correct and continue to use this date for the purposes of its analysis. Plaintiffs were on notice that this is the date the Court used in its previous Order, and they did not provide a separate date in their TAC or Opposition to the County's Motion to Dismiss Plaintiffs' Third Amended Complaint or contest the previous use of this date. *See generally* TAC; Opp'n. Therefore, the Court concludes that the Parents' CACI placement took place on May 17, 2022.

Plaintiffs include additional information in their TAC regarding the conduct leading up to the attempted removal of the Pardo triplets (TAC ¶¶ 21–33), the Parents' challenges to their CACI placement (TAC ¶¶ 44–45, 48, 58–61), juvenile court hearings and additional investigation conducted by CWS through the end of 2022 (TAC ¶¶ 43, 45, 49–52), ongoing emotional trauma suffered by the Pardo triplets (TAC ¶¶ 53–54), and the Parents repeated attempts to access their CWS and CACI records (TAC ¶¶ 40, 42, 45, 48, 56–58).   In the Court's Order, the Court concluded that the subsequent conduct occurring after June 2022 identified by Plaintiffs in their Opposition to Motion to Dismiss the Second Amended Complaint (ECF No. 23) "is best understood as the continuing impact from a past violation" and thus was inactionable.  Order at 14 (quoting *Williams*, 665 F.2d at 924).  As the County correctly points out, while more detailed, this additional information provided in Plaintiffs' prior Opposition (ECF No. 23) is the same information now provided in the TAC. *See* Mot. at 3.  In its Order, the Court also concluded that because Plaintiffs were relying upon the continuing violation doctrine, they conceded that the relief they sought was based on conduct occurring outside of the statute of limitations.  Order at 15.

The Court makes the same conclusion here.  The additional allegations made by Plaintiffs "simply demonstrate 'injuries resulting from the [May 2022] act[s] of' attempting to remove the Pardo triplets and placing the Pardo parents on the CACI." *Id.* at 14 (quoting *Bird v. Dep't of Human Servs.*, 935 F.3d 738, 748 (9th Cir. 2019)).  "As the case law makes clear, 'continuing impact from past violations is not actionable.'" *Id.* (quoting *Williams*, 665 F.2d at 924); *see also Del. State Coll. v. Ricks*, 449 U.S. 250, 252–54 (1980) (recognizing that "[t]he proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful" (quoting *Abramson v. Univ. of Haw.*, 594 F.2d 202, 209 (9th Cir. 1979))).  Further, Plaintiffs "allege that any applicable statute of limitations is subject to equitable tolling."  TAC ¶ 63.  Thus, by explicitly relying on the equitable tolling doctrine, Plaintiffs again implicitly concede that any relief sought is based on conduct outside of the previously defined statute of limitations.

1    Therefore, to avoid Plaintiffs' § 1983 claims from being time-barred, Plaintiffs must
2    "adequately allege[] facts showing the potential applicability of the equitable tolling
3    doctrine." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1277 (9th Cir. 1993).

4    ###    A.    *Equitable Tolling Doctrine*

5    As discussed above, for actions under 42 U.S.C. § 1983, district courts apply the law
6    of the forum state regarding tolling. *Blanas*, 393 F.3d at 927. Thus, California equitable
7    tolling law applies. Equitable tolling "is a judge-made doctrine 'which operates
8    independently of the literal wording of the Code of Civil Procedure' to suspend or extend
9    a statute of limitations as necessary to ensure fundamental practicality and fairness."
10    *Lantzy v. Centex Homes*, 31 Cal. 4th 363, 370 (2003) (quoting *Addison v. State of*
11    *California*, 21 Cal. 3d 313, 318–19 (1978)). Under California law, Plaintiffs must meet
12    three conditions to equitably toll the statute of limitations: (1) they must have diligently
13    pursued their claims; (2) their situation must be the product of forces beyond their control;
14    and (3) Defendants must not be prejudiced by the application of equitable tolling. *See*
15    *Jasso v. Flores*, No. 24-CV-615-JAH-MMP, 2024 WL 4280957, at *3 (S.D. Cal. Sept. 24,
16    2024) (first citing *Hull v. Cent. Pathology Serv. Med. Clinic*, 28 Cal. App. 4th 1328, 1335
17    (1994); then citing *Addison*, 21 Cal. 3d at 316–17). "The effect of equitable tolling is that
18    the limitations period stops running during the tolling event, and begins to run again . . .
19    when the tolling event has concluded." *Kraft Americas, L.P. v. Oldcastle Precast, Inc.*,
20    641 F. App'x 718, 720 (9th Cir. 2016) (quoting *Lantzy*, 31 Cal. 4th at 370–71). "The
21    burden of alleging facts which would give rise to tolling falls upon the plaintiff." *Hinton*
22    *v. Pacific Enterprises*, 5 F.3d 391, 395 (9th Cir. 1993) (citations omitted).

23    Plaintiffs allege that they "were denied access to the complete [CWS] file necessary
24    to understand the full scope of Defendants' misconduct" and "were repeatedly mislead or
25    stonewalled in their attempts to obtain the evidence needed to evaluate and prepare legal
26    claims." TAC ¶ 63. Plaintiffs argue that this delay in access "was caused by the affirmative
27    actions and omissions of Defendants, who withheld critical records, failed to respond to
28    multiple requests from Plaintiffs and their representatives, and intentionally concealed

material facts." *Id.* Plaintiffs conclude that "[e]quity therefore requires that the statute of limitations be tolled until the date Plaintiffs discovered, or with reasonable diligence could have discovered, the basis for their claims." *Id.* Plaintiffs, however, fail to point to a date to where the statute of limitations should be tolled. Instead, Plaintiffs state that they "have yet to discover the full extent of Defendants' discriminatory, retaliatory, and unlawful conduct[,]" *id.*, and repeatedly discuss how they have yet to receive the CWS file, *id.* ¶¶ 45, 56–57, 61. The Court is unconvinced by Plaintiffs' apparent solution that the statute of limitations be tolled to some unspecified date "until Plaintiffs could discover the claims' bases." Opp'n at 10.

Further, the County correctly points out that Plaintiffs began litigation in this matter in San Diego Superior Court on July 3, 2023, against the same Defendants in the present matter for the same underlying events. Mot. at 13. Plaintiffs voluntarily dismissed the state court action, "which unexplainably lingered in the pleading stage for approximately one year, following a case management conference on June 21, 2024." *Id.* The County argues that this undercuts Plaintiffs' "present claim of ignorance of evidence 'needed to evaluate and prepare legal claims' prior to June 20, 2024." *Id.* The Court agrees. Plaintiffs pled nearly twelve pages of factual allegations against the County in their TAC and have filed two lawsuits regarding the alleged conduct, the present action and the 2023 state court action—hardly demonstrating that Plaintiffs were kept in the dark regarding information relevant for their claims. *See* TAC ¶¶ 17–62.

Additionally, Plaintiffs voluntarily dismissed their state court claim after "lingering" in the pleading stage for almost a year. Mot. at 13. "California courts have concluded that absent express statutory language, a plaintiff's voluntary dismissal will not entitle him to toll the statute of limitations." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1127 (9th Cir. 2008) (first citing *Wood v. Elling Corp.*, 20 Cal. 3d 353, 359 (1977); then citing *Thomas v. Gilliland*, 95 Cal. App. 4th 427, 433 (2002)). Courts have concluded that failure to litigate a prior state law claim demonstrates that the plaintiff was not "diligently" pursuing their claim as required for equitable tolling. *See, e.g.*, *Marano v. Neotti*,

No. 16cv0189-LAB (JLB), 2017 WL 553390, at *3 (S.D. Cal. Feb. 10, 2017) ("Plaintiff's allegations supporting equitable [tolling] are insufficient because they are based on his abandoned effort to litigate his claims in state court before coming to this court . . . ."); *Cooper v. Paramo*, No. 20-cv-1342-AJB-NLS, 2021 WL 4501758, at *2 (S.D. Cal. Sept. 3, 2021) ("The decision to litigate his claims in state court in the first instance, is a decision within his control, and is not an extraordinary circumstance calling for equitable tolling.").

Therefore, Plaintiffs have not met their burden regarding the applicability of the equitable tolling doctrine, as Plaintiffs have failed to demonstrate how Defendants' actions prevented them from litigating this case, nor have they demonstrated that they diligently pursued their claims. The Court need not address the other two requirements of the equitable tolling doctrine. *See Watkins v. Singh*, No. 2:12-CV-1343 GEB DAD, 2014 WL 2930536, at *4 (E.D. Cal. June 27, 2014), *aff'd sub nom.*, *Watkins v. Spears*, 627 F. App'x 631 (9th Cir. 2015) (finding equitable tolling inapplicable because of plaintiff's lack of diligence without addressing the other two requirements).

Because Plaintiffs have failed to satisfy their burden alleging sufficient facts to support equitable tolling, and because they seek relief only from events that occurred in May 2022, Plaintiffs' § 1983 claims are barred by the statute of limitations. Accordingly, the Court **GRANTS** the County's Motion to Dismiss as to Claims I–V.

## II.    Remaining State Law Claims

Having successfully achieved dismissal of Plaintiffs' federal claims, the County urges that Court should decline to exercise supplemental jurisdiction over the remaining state law claims. Mot. at 14. Plaintiffs fail to address the supplemental jurisdiction argument—instead arguing the federal claims survive based on equitable tolling. Opp'n at 10.

Where a "court dismisses on the merits a federal claim over which it had original jurisdiction, it may then decline to exercise supplemental jurisdiction over the remaining state claims, subject to the factors set forth in § 1367(c)(1)–(4)." *Herman Family Revocable Tr. v. Teddy Bear*, 254 F.3d 802, 806 (9th Cir. 2001) (citing *Acri v. Varian*

*Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997)). Those § 1367(c) factors include whether: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." *Id.* The ordinary rule favors dismissal of state law claims when the federal claims are dismissed before trial. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."). And this case, which is still at the pleading stage, presents a straightforward instance of judicial economy and comity principles weighing in favor of dismissal. *See Acri*, 114 F.3d at 1001 (identifying "economy, convenience, fairness, and comity" as essential factors to consider). As courts have long recognized, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Accordingly, the Court declines to exercise supplemental jurisdiction over the state law claims and **GRANTS** the County's Motion to Dismiss as to Claims VI–XIII. *See Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001).

## III.    Leave to Amend

The final consideration is whether Plaintiffs should again be granted leave to amend. Leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). But while the rule should be interpreted liberally, leave should not be granted automatically. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990). In determining whether to grant leave to amend, trial courts should consider various factors, including bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the party has previously amended. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Applying the *Foman* factors here, the Court declines to grant Plaintiffs leave to amend for a fourth time. Plaintiffs were "reluctantly" granted leave to amend after the

SAC was dismissed and were expressly told to address equitable tolling after the Court expressed doubt that Plaintiffs would be able to overcome the statute of limitations bar to their federal claims. Order at 17; *see also Marano*, 2017 WL 553390, at *4 (dismissing with prejudice after a party was explicitly told they needed to satisfy equitable tolling to continue, and they failed to do so). The Court finds that "it is clear that granting leave to amend would [be] futile." *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004). Thus, Plaintiffs claims are dismissed without leave to amend.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** the County's Motion to Dismiss Plaintiffs' Third Amended Complaint (ECF No. 28) and **DISMISSES WITH PREJUDICE** Plaintiffs' Third Amended Complaint (ECF No. 27). As this concludes the litigation in the matter, the Clerk of Court **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated:  January 13, 2026

Hon. Janis L. Sammartino
United States District Judge

24-CV-1062 JLS (SBC)